**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 05-4175**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DIALLO COBHAM,

Defendant - Appellant.

———————

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Alexander Williams, Jr., District Judge.
(CR-04-173-AW)

———————

Submitted:  December 21, 2005          Decided:  February 2, 2006

———————

Before LUTTIG, MICHAEL, and MOTZ, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

James Wyda, Federal Public Defender, Martin G. Bahl, Staff
Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore,
Maryland, for Appellant.  Rod J. Rosenstein, United States
Attorney, Michael R. Pauze, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for
Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

A grand jury charged Diallo Cobham with conspiracy to distribute cocaine in violation of 21 U.S.C.A. § 846 (West 1999), possession with intent to distribute cocaine in violation of 21 U.S.C.A. § 841 (West 1999), and possession of a firearm after a felony conviction in violation of 18 U.S.C.A. § 922(g) (West 2000). Prior to trial, Cobham moved to suppress drugs and other evidence recovered during a search of his truck at the Baltimore-Washington International Airport ("BWI"). After an evidentiary hearing, the district court denied the motion. A jury subsequently convicted Cobham of all charges, and the district court sentenced him to a 240-month term of imprisonment, followed by eight years of supervised release. Cobham appeals his conviction, arguing that the district court erred in denying his motion to suppress the evidence. He also appeals his sentence, contending that the district court erred by enhancing his sentence based on his prior drug-related offenses. We affirm.

In February 2004, Detective Scott C. Parrish received information from a confidential informant in California identifying Diallo Cobham as a "kilogram cocaine dealer." The source provided information concerning the location of Cobham's drug supplier, Cobham's method of transportation, and a detailed description of how Cobham wrapped his supply of cocaine in black electrical tape and then concealed it in dark clothing inside his baggage. After

receiving this information, Det. Parrish investigated further and discovered that Cobham had two prior felony convictions in Maryland, in addition to arrests for drug charges in Los Angeles and Maryland.

On March 22, 2004, a Southwest Airline employee told Parrish that Cobham was traveling from Los Angeles to BWI, going through St. Louis, returning from a trip made to California the previous day. Det. Parrish also discovered that Cobham would often travel to Los Angeles and spend less than 24 hours there. Armed with all this information, Det. Parrish, along with other officers, established surveillance at BWI airport. When Cobham's flight landed, he left the plane carrying a backpack, went to baggage claim to retrieve one checked suitcase, and then went to the airline office to recover a second suitcase that had been damaged in flight. He then made his way to the parking garage.

As Cobham reached his pickup truck, Det. Darin Cover, approached and asked if he could speak to Cobham. While other law enforcement officers and a police canine were present in the vicinity of the pickup, they all remained several feet away. During the course of the conversation, Det. Cover, a 17-year veteran of the police force, observed that Cobham acted in a nervous manner, sweating, stuttering, and pacing. Det. Cover asked Cobham for identification, which he provided. Cobham then placed his two suitcases and backpack in his truck and locked the vehicle.

Det. Cover asked Cobham if he had any drugs on him and Cobham replied that he did not, but Cobham refused to consent to a search of his luggage.  Cobham then made a call on his cell phone and told the detective that "my lawyer said I should leave."  Det. Cover told Cobham that he was free to leave, but that his truck "wasn't going anywhere."  As Cobham began to walk away, the police canine alerted on the driver's side of the truck.  The police then arrested Cobham and searched the truck, finding a brick of cocaine wrapped in electrical tape and concealed in a pair of jeans.

The Fourth Amendment permits law enforcement officers to seize the person or property of another without a warrant or probable cause when the officers have a "reasonable, articulable suspicion that the person has been, or is about to be engaged in criminal activity."  United States v. Place, 462 U.S. 696, 702 (1983) (citing Terry v. Ohio, 392 U.S. 1, 22 (1968)).  This exception is limited to those circumstances in which a substantial governmental interest supports the seizure and the detention only minimally intrudes.  Place, 462 U.S. at 703.  "[W]here the authorities possess specific and articulable facts warranting a reasonable belief that a traveler's luggage contains narcotics, the governmental interest in seizing the luggage briefly to pursue further investigation is substantial."  Id.

We agree with the district court that the officers did not seize Cobham when they approached him in the airport parking lot.

No violation of the Fourth Amendment occurs when police merely approach an individual and ask some questions of him, even when an officer identifies himself as a law enforcement agent. See Florida v. Royer, 460 U.S. 491, 497 (1983). A seizure takes place only when a reasonable person under the circumstances would not feel free to leave or otherwise terminate the encounter. See Florida v. Bostick, 501 U.S. 429, 434 (1991). Here, Det. Cover identified himself as a law enforcement officer and received Cobham's permission to speak with him. All other officers in the vicinity remained several feet away. Det. Cover did not retain Cobham's identification or ticket stub but rather returned them both after briefly inspecting them. See Royer, 460 U.S. at 504. When Cobham refused to consent to a search, Detective Cover told him he was free to leave. Given the brevity of the encounter and that Det. Cover explicitly gave Cobham permission to leave, a reasonable person in this situation would have felt free to terminate the encounter. Therefore, we conclude that no seizure of Cobham occurred.

The law enforcement officers at BWI did seize Cobham's truck, however. The only questions are whether the officers had a reasonable suspicion to justify their seizure, and whether the seizure was properly limited in scope. Cover seized Cobham's truck based on a tip from a confidential source, Cobham's frequent travel to a source state for one night, Cobham's locking his luggage into

his truck while in the presence of a police officer, his sweating, stuttering, and pacing, and his prior arrests on drug charges. The totality of these circumstances create a reasonable, articulable suspicion that Cobham was carrying drugs in his luggage, thus justifying the seizure of his property.

Additionally, we believe that the seizure of the truck was properly limited in its scope. A police canine arrived at the truck while Cobham was walking away; after circling the truck, the dog alerted within minutes of the initial encounter. The detention of the property lasted only a few minutes prior to Cobham's arrest, was minimally intrusive, and was therefore appropriate in scope. See, e.g. Royer, 460 U.S. at 505-06; Place, 462 U.S. at 705-06. Accordingly, no violation of the Fourth Amendment occurred.

Finally, we reject Cobham's Sixth Amendment claim that the district court improperly enhanced his sentence based on his prior convictions. As Cobham concedes, the Supreme Court has held that prior convictions do not constitute elements of an offense, which must be found beyond a reasonable doubt by a jury. See United States v. Almendarez-Torres, 523 U.S. 224, 243 (1998). The Court's recent holding in United States v. Booker, 125 S. Ct. 738 (2005) does not require a different result. See United States v. Cheek, 415 F.3d 349, 354 (4th Cir. 2005).

We therefore affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions

are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED